UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FEDERAL TRADE COMMISSION | CIVIL ACTION |
| VERSUS | NO:  89-1740 |
| NATIONAL BUSINESS CONSULTANTS, INC., et al | SECTION: "M"(1) |

## REPORT AND RECOMMENDATION

Before the undersigned are two motions by Claude C. Lightfoot, Jr. ("Receiver").  In the first motion, Mr. Lightfoot is proceeding in his capacity as receiver of America First Communications, Inc. ("AFC") for authority to pay brokerage fees to William Whitley ("Whitley") of Media Services Group.  Rec. doc. 1261.  In the second motion, Receiver requests approval of the application of Joseph C. Chautin, III, of Hardy, Carey, Chautin & Balkin, LLP for professional fees and expenses. Rec. doc. 1262.  All motions for fees and costs in this case were referred to the undersigned.  Rec. doc. 1263.

### MOTION FOR AUTHORITY TO PAY BROKER'S COMMISSION

AFC was the owner of approximately eleven acres of real property in St. Tammany Parish with a transmission tower.  It also owned a license to operate a radio station.  On January 16, 2007, pursuant to the District Judge's order, Whitley was employed as a marketing broker in connection with the sale of the station.  The order provided that his employment was pursuant to the Exclusive Station Marketing Agreement attached to the motion to employ.  Rec. doc. 1209.

Whitley solicited, negotiated, and received a written offer from Thomas McDaniel to purchase the radio station assets for $350,000. The Receiver moved for an order approving the sale. Rec. doc. 1225. There were objections to the motions. On May 31, 2007, there was hearing at which Whitley testified. Open bidding was permitted, and bids were received at the hearing. Rec. doc. 1239. A confirmation hearing was held on June 19, 2007, at which the offer by MCDJ, LLC for $578,000 was accepted. Rec. doc. 1242. The closing occurred on September 18, 2007.

The Receiver reports that Whitley submitted a statement for $33,900, which is in accord with the terms and conditions of the Exclusive Station Marketing Agreement. The Receiver requests authority to pay that sum to Whitley.

The only opposition is a letter from Robert Namer, dated November 5, 2007, which will be filed into the record. Mr. Namer requests an evidentiary hearing to present evidence in opposition to both motions. His arguments are without merit. He contends that he had investors who were willing to pay $600,000 before a broker was hired.

An auction of the radio station license and assets was scheduled for May 16, 2006. No bids were received, so the auction was canceled. Namer requested and was granted an opportunity to produce bona fide offers from third parties to purchase the radio station license and assets as well as the Kingman Street property. Rec. doc. 1165. He did not produce any such offers. Rec. doc. 1165. At the same hearing, the Receiver reported that he wanted to hire a broker to market the radio station license and assets. Id. The Receiver did not submit a motion to employ Whitley until January 15, 2007. Rec. doc. 1208. Mr. Namer had ample opportunity to submit a bona fide offer on satisfactory terms and preempt the need for the employment of broker. The Receiver's motion

for authority to pay broker's commission will be granted.

## MOTION TO PAY APPLICATION OF SPECIAL COUNSEL FOR FEES

On June 21, 2005, the District Judge granted the Receiver's motion to employ Hardy, Carey & Chautin, L.L.P., as special counsel, to assist him in connection with the seizure and sale of the radio station license and assets.[1]  Joseph C. Chautin III was to be compensated at the hourly rate of $210, subject to approval by the Court.  Rec. doc. 890.  The Receiver's motion seeks an order for the payment of fees of $73,027.50 and costs of $1,778.22 for a total of $74,805.72.  The Receiver asserts that these fees and costs were reasonable and necessary.

The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the "lodestar." Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996).  The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 1939-40 (1983).  However, "the district court [retains] broad discretion in setting the appropriate award of attorneys' fees." Hensley, 103 S. Ct. at 1939-40.

"The district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)." Forbush, 98 F.3d at 821; see also Walker v. United States Dep't of Hous. and Urban Dev., 99 F.3d 761, 771-73 (5th Cir.1996) (describing the limited circumstances in which an adjustment to the lodestar is appropriate).  The Johnson factors are as follows: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to

---

[1] The name of the firm was changed Hardy, Carey, Chautin & Blakin, LLP.

3

perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.  While the court is required to give reasons upon which an award is based, it is not required to fully address each of the Johnson factors in the recitation of its reasons.   See Curtis v. Bill Hanna Ford, Inc., 822 F.2d 549 (5th Cir. 1987).  In Hensley the Supreme Court noted that many of the Johnson factors are "subsumed" in the initial calculation of reasonable hours and rates.  103 S. Ct. at 1940 n. 9.

In calculating the lodestar, the hours worked and the rates claimed should be supported by the billing records of the attorney making the claim for fees.  Watkins v. Fordice, 7 F.3d 453, 457 (1993).  The court then determines the number of hours that were "reasonably expended" in litigation of the claim.  The Fifth  Circuit instructs that compensable hours are determined from the attorney's time records and include all hours reasonably spent.  Shipes v. Trinity Industries, 987 F.2d 311, 319 (5th Cir. 1993).  Counsel is "then required to exercise billing judgment to exclude from the fee request any "hours that are excessive, redundant or otherwise unnecessary."  Hensley, 103 S. Ct. at 1939-40.  In Walker v. City of Mesquite, 313 F.3d 246 (5th Cir. 2002), the Fifth Circuit found that there was no evidence of the exercise of billing judgment, because the time and billing records "did not document both the hours charged and the hours written off. . ." Id. at 251.  It said,

> If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of the hours awarded by a percentage intended to substitute for the exercise of billing judgment.

313 F.3d at 251 (Citations and quotation marks omitted).  See also Ablerti v. Klevenhagen, 896 F2d 927, 930 (5th Cir. 1990) and Leroy v.City of Houston, 831 F.2d 576, 586 (5th Cir. 1987).

Exhibit A to the application for attorney's fees is the statement of Mr. Chautin's firm.  The undersigned carefully reviewed the statement.  It contains detailed descriptions for each entry.  These descriptions demonstrate that the activity was reasonably expended for the purposes for which the Receiver sought authority to employ Mr. Chautin's firm.

The statement, however, does not present any evidence of the exercise of billing judgment.  In Walker v. U.S. Dep't of Hous. and Urban Dev., 99 F.3d 761, 769-70, the Fifth Circuit determined that the appropriate reduction where there was no evidence of the exercise of billing judgment was fifteen percent.

The smallest time entry for Mr. Chautin and the other timekeepers was three-tenths of an hour or eighteen minutes.  The next smallest segment was a half hour.  In two unpublished opinions, the Fifth Circuit has refused to interpret regulations governing the U.S. Department of Labor's Benefits Review Board as authorizing "rounding up" to quarter-hour increments for work that was actually performed in a shorter period of time.  See Ingalls Shipbuilding, Inc. v. Director OWCP [Fairley], No. 89-4459 (5th Cir. July 25, 1990), (unpublished) and Ingalls Shipbuilding v. Director, OWCP [Briggs], No. 94-40066, 46 F.3d 66 (5th Cir. Jan. 12, 1995) (unpublished).  According to Fifth Cir. Rule 47.5.3, "[u]npublished opinions issued before January 1, 1996, are precedent."  See also Conoco, Inc. Director, OWCP [Prewitt], 194 F.3d 684, 689 (5th Cir. 1999).  If rounding up to quarter-hour segments is not authorized, it is equally inappropriate to round up to segments of three-tenths or half of an hour.

Based on the lack of evidence of billing judgment and the indication that rounding up

5

occurred for some of the entries, the hours sought will be reduced by twelve percent. <u>Walker v City of Mesquite</u>, 313 F.3d at 251.

At the second step in determining the lodestar, district courts must select an appropriate hourly rate based upon the <u>prevailing community standards</u> for attorneys of similar experience in similar cases. <u>Shipes v. Trinity</u>, 987 F.2d at 319 (emphasis added).  The statement demonstrates that the hourly rate for Mr. Chautin is consistent with the Court's order.  Rec. doc. 890.  Where the work was assigned to persons with less experience, lower hourly rates were employed.  These lower hourly rates are consistent with the prevailing community standards for attorneys with similar experience.

The next step is the consideration of the twelve <u>Johnson</u> factors.  In <u>Walker v. HUD</u>, the Fifth Circuit said, "[t]here is a strong presumption that the lodestar is the reasonable fee. . . ." 99 F.3d at 771.  No adjustment to the lodestar, either up or down, is mandated by consideration of the <u>Johnson</u> factors.

The undersigned's review of the costs sought by Mr. Chautin demonstrates that they were reasonably incurred.

The twelve percent reduction in the hours will be achieved by reducing the request for fees of $73,027.50 by twelve percent or $8,763.30 for a net amount of $64,264.20.  With costs of $1,778.22, the total award of $66,042.42.

<u>RECOMMENDATION</u>

It is RECOMMENDED that:

1. The Receiver's motion for authority to pay brokerage fees in the amount of $33,900.00 William Whitley of Media Services Group. (Rec. doc. 1261) be GRANTED.

2. The Receiver's motion to approve and pay first and final application of special counsel for fees and expenses (Rec. doc. 1262) be GRANTED in PART and DENIED in PART.

3. Joseph C. Chautin, III and the firm of Hardy, Carey, Chautin & Balkin, LLP be awarded fees of $64,264.20 and costs of $1,778.22 for a total of $66,042.42.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. USAA, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 16th day of November, 2007.

```
                            SALLY SHUSHAN
                      United States Magistrate Judge
```